UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| RACING SERVICES, INC., | ) | |
| | ) | Bankruptcy No. 04-30236 |
| Debtor. | ) | |
| | ) | |
| SUSAN BALA, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 17-07034 |
| | ) | |
| v. | ) | |
| | ) | |
| PWE ENTERPRISES, INC., AND | ) | |
| KIP M. KALER, CHAPTER 7 | ) | |
| TRUSTEE. | ) | |
| | ) | |
| Defendants. | ) | |

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter came before the Court for hearing in Fargo, North Dakota.[1]

Michael Raum, Steve Kinsella, and Bruce Schoenwald appeared for Susan Bala

("Bala").  Martin Foley and Leanna Anderson appeared for PW Enterprises, Inc.

("PWE").  Jonathan Fay and Patrick Sinner appeared with and for Kip Kaler as

Chapter 7 Trustee.  The parties filed post-trial briefs.  This is a core proceeding

under 28 U.S.C. § 157(b)(2)(A).

---

[1] The Honorable Thad J. Collins, Chief United States Bankruptcy Judge for the
Northern District of Iowa, sitting by designation.

## STATEMENT OF THE CASE

As a part of a criminal conviction, the United States received an order of forfeiture against Debtor, Racing Services Inc. ("RSI").  In response to that forfeiture, Trustee, the United States, and PWE entered into a settlement agreement that included disposition of property.  Later, RSI's conviction and the order of forfeiture were overturned.  The United States then returned the money and property exchanged under the settlement agreement to the bankruptcy estate.  The parties now dispute whether the agreement continues to be effective as between PWE and RSI's bankruptcy estate.

Bala filed this adversary seeking a declaratory judgment that the settlement agreement is void, making PWE's releases ineffective.  PWE and Trustee argue that the agreement is still in effect between PWE and RSI's bankruptcy estate.  PWE argues that Bala does not have standing to challenge the settlement and that the United States is a necessary party.

Bala moves for summary judgment.  She argues that this Court did not have jurisdiction to approve the settlement.  She also argues that the United States and the Trustee voided or rescinded the settlement agreement after the reversal of the criminal conviction and forfeiture.  PWE also moves for summary judgment arguing that the agreement was severable, that res judicata applies, that PWE was a good faith purchaser under section 363(m), and that the issue is moot.  The Court

2

finds that it did have jurisdiction and that the settlement agreement is severable.

The agreement thus remains valid between PWE and RSI's bankruptcy estate.

## BACKGROUND AND FACTS

This adversary action is a small piece in a much larger puzzle. The main

bankruptcy case has spanned over a decade and undergone many twists and turns.

The parties to this action have a long history that the Court need not restate in its

entirety here. The Debtor, RSI, was an off-track horse racing service provider. It

took bets and managed betting pools for off-track horse race betting in North

Dakota. Susan Bala is the sole owner of RSI. PWE is an entity owned by Peter

Wagner ("Wagner"), a high-volume professional gambler. PWE was one of RSI's

biggest clients for many years. In the early 2000's Bala and Wagner, through RSI

and PWE, started a new betting operation together in Mexico. When RSI filed for

bankruptcy in 2004, it held some claims against PWE relating to the betting

operation in Mexico.

In 2003, RSI was indicted on charges of illegal gambling. In 2005, the jury

convicted RSI of these charges. The jury also reached a verdict on the

corresponding forfeiture allegations. The jury found RSI did not have a valid

license for a second betting location and issued a criminal forfeiture in the amount

of wagers that passed through that location, $99,013,200. The jury also found that

the statutory "takeout"–a percentage of the betting pool RSI took out to pay

3

expenses and keep as profit–amounted to $19,719,186 and was subject to criminal forfeiture by Ms. Bala personally, as the sole owner of RSI.  Accordingly, the United States District Court for the District of North Dakota entered a $99,013,200 order of forfeiture against RSI and a $19,719,186 order of forfeiture against Bala.

In 2006, this Bankruptcy Court entered an order approving a settlement between PWE, Trustee, and the United States (the "Settlement Agreement") dealing with the forfeiture order.  The Settlement Agreement provided, among other things, that: (1) RSI's bankruptcy estate would pay $132,500 to the United States and the Trustee would give the United States an assignment of certain assets; (2) the United States would release RSI, Trustee, and the bankruptcy estate from liability on the forfeiture; (3) PWE would pay $150,000 to RSI's bankruptcy estate; (4) RSI's estate would release PWE and PWE's affiliates of all claims arising out of, or related to, the business relationship between RSI and PWE and its affiliates.  RSI likely would not have been able to fund a settlement payment to the United States without simultaneously settling its claims with PWE.  PWE paid $150,000 to the RSI bankruptcy estate in exchange for releases.  RSI paid $132,500 to the United States (along with other specified assets) in exchange for a release of the United States forfeiture rights against RSI.

In 2007, the United States Court of Appeals for the Eighth Circuit reversed RSI's conviction and the accompanying order of forfeiture.  United States v. Bala,

4

489 F.3d 334 (8th Cir. 2007).  After this reversal, the United States returned the

$132,500 it received to the RSI estate, along with the assignments it received under

the Settlement Agreement.  PWE did not return anything it received under the

Settlement Agreement.  The Bankruptcy Trustee and PWE have continued to

operate as if the Settlement Agreement is still in force between them.  Bala argues

that the Settlement Agreement is void in its entirety.  This is the dispute currently

before the Court.

Bala filed this adversary seeking a declaratory judgment that the Settlement

Agreement is void for two reasons.  First, she argues the Bankruptcy Court lacked

jurisdiction and constitutional authority to enter the Order approving the

Settlement Agreement.  Second, she argues the United States and Trustee voided

the Settlement Agreement when the United States returned money and property

transferred under the agreement and Trustee accepted the returned money and

property.

PWE and Trustee argue that Bala does not have standing to bring this action,

that the United States is an indispensable party, that this Court had jurisdiction to

approve the Settlement Agreement and that, at most, the Agreement was rescinded

only as between the United States and RSI.  They argue that the agreement remains

valid between PWE and RSI.  The Court will address the specific arguments and

the facts underlying those specific arguments as needed in the next section.

5

The Court has previously held hearings on this matter.  At those hearings, the parties agreed that the dispute was a purely legal one.  As a result, they agreed to submit this adversary for ruling on cross-motions for summary judgment. Nevertheless, along with the briefs in this case, they have submitted extensive requests for the Court to take judicial notice of many documents.  It is unclear what, if any, factual dispute is at issue in this matter that would need to be resolved by resorting to those documents.  The parties agree about what happened leading up to the Settlement Agreement, the terms of the Settlement Agreement, and what happened after RSI's conviction and forfeiture were reversed.  These facts are set forth clearly in their pleadings and briefs and are sufficient for resolution of this purely legal dispute.

The Court will first address PWE's Motion to Dismiss due to Bala's purported lack of standing and failure to join the United States.  Next, the Court will address Bala's arguments that the Court did not have jurisdiction to approve the Settlement Agreement and that the actions of United States and the Bankruptcy Trustee acted to void the entire agreement under the doctrine of mutual mistake. Finally, the Court will address PWE's arguments that the provisions of the Settlement Agreement are severable, leaving the PWE portions of the agreement in full effect.

6

## CONCLUSIONS OF LAW AND ANALYSIS

**I.    PWE and Trustee's Motion to Dismiss for Lack of Standing and Failure to Join a Necessary Party**

PWE and Trustee argue that the Court should dismiss Bala's complaint because she does not have standing and she failed to join the United States as a party.  "In order for a court to decide the merits of a particular dispute, a party must have standing. Standing requires that a party assert its own legal rights and interests and cannot rest its claims to relief solely on the legal rights or interests of third parties." In re Petters Co., Inc., 565 B.R. 154, 160 (Bankr. D. Minn. 2017) (footnote omitted).  "A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1), because standing is a jurisdictional matter." In re Merritt, 529 B.R. 845, 857–58 (Bankr. E.D. Pa. 2015), aff'd, No. 11-18134, 2016 WL 930696 (E.D. Pa. Mar. 10, 2016), aff'd, 711 F. App'x 83 (3d Cir. 2017).

PWE and Trustee argue Bala does not have standing because she was not a party to the Settlement Agreement.  They argue that only PWE, the United States, or Trustee have standing to challenge the continued validity of the agreement. They rely on authority that discusses standing to bring an appeal for support.  In re Zahn, 526 F.3d 1140, 1142 (8th Cir. 2008) ("[I]n order to have standing to appeal the decision of the bankruptcy court, an appellant must be a person aggrieved."). Bala argues that these cases address standing to appeal, not standing to challenge a settlement, like she does here.  Bala argues that, as a creditor of the Estate, she has

7

standing to seek a declaratory judgment that will directly affect whether an asset is property of the bankruptcy estate.

"The question of standing generally challenges whether a party is the proper one to request an adjudication of a particular issue." In re Patriot Co., 303 B.R. 811, 815 (B.A.P. 8th Cir. 2004). "To have standing to object to a bankruptcy court's order, a person must have 'a pecuniary interest in the outcome of the bankruptcy proceedings' [and] the bankruptcy court's order must 'directly and adversely' affect that interest." In re Adams, 424 B.R. 434, 435 (Bankr. N.D. Ill. 2010) (citations omitted) (collecting cases). For example, "[t]ypically, a Debtor has no standing to object to claims or orders relating to them because the debtor does not have a **pecuniary interest** in the distribution of the assets of the estate." In re Zumbach, No. BR 12-00787, 2015 WL 1064612, at *2 (Bankr. N.D. Iowa Mar. 9, 2015) (quoting Keiffer v. Riske (In re Kieffer–Mickes, Inc.), 226 B.R. 204, 208–09 (B.A.P. 8th Cir. 1998)) (internal quotation marks omitted). Bala, however, is not the debtor in this case.

Bala has standing to challenge the continued validity of the Settlement Agreement because she is a creditor and an equity shareholder seeking distribution from the bankruptcy estate. Simply stated, she has a financial stake in the validity of the Settlement Agreement and, thus, has standing. The fact that she was not a party to the agreement is irrelevant. She has a pecuniary interest in the outcome of

this litigation.  If the Court finds for her and declares that the agreement is no longer valid, RSI's bankruptcy estate will retain claims against PWE that were previously thought to be released.  As a creditor and equity holder, Bala has a pecuniary interest in the bankruptcy estate's claims.

PWE also argues that the United States is a necessary party to this action. PWE argues that "Bala should have included the United States in the complaint so that it can comment on whether it deems the entire agreement rescinded as to all parties."  PWE seeks dismissal of the complaint because it fails to include a necessary party.

"Federal Rule of Civil Procedure 12(b)(7) permits dismissal of a complaint for failure to join a party under Rule 19, although 'courts are generally reluctant to grant motions to dismiss of this type.'"  Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B., 786 F.3d 662, 671 (8th Cir. 2015) (quoting 16th & K Hotel, LP v. Commonwealth Land Title Ins. Co., 276 F.R.D. 8, 12 (D.D.C. 2011)). Rule 19 provides that a party is required to be joined if feasible when:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.  This rule applies in adversary proceedings.  Fed. R. Bankr. P. 7019.  "Under Federal Rule of Civil Procedure 19, a nonparty is indispensable to an action if (1) the nonparty is necessary; (2) the nonparty cannot be joined; and (3) the action cannot continue in equity and good conscience without the nonparty."  U.S. ex rel. Steele v. Turn Key Gaming, Inc., 135 F.3d 1249, 1251 (8th Cir. 1998).  PWE has the burden to show these elements.  In re Brooke Corp., 443 B.R. 847, 851 (Bankr. D. Kan. 2010).

PWE has not met its burden to show these elements.  First, PWE failed to show that the United States is a necessary party.  The United States has already removed itself from these matters by returning the funds it received under the Settlement Agreement.  It will not be prejudiced if the adversary continues without it.  PWE's assertion that the United States is a necessary party so that it can "comment on whether it deems the entire agreement rescinded" is unpersuasive. The United States does not need to be joined to provide its view on the ultimate issue in this adversary.

Even if the United States were a necessary party, it could be joined.  Federal Rule 19(a)(2) requires a court to order that a necessary party be joined in an action. Fed. R. Civ. P. 19(a)(2).  The Court could order the United States to be joined as a

10

defendant under Bankruptcy Rule 7020 and Federal Rule 20(a)(2).  Fed. R. Bankr.

P. 7020; Fed. R. Civ. P. 20(a)(2).  While PWE suggests that the United States

could not be so joined because of the doctrine of sovereign immunity, this analysis

misses 11 U.S.C. § 106, which provides for the abrogation and waiver of sovereign

immunity under certain circumstances applicable here.  11 U.S.C. §§ 106(a)(1),

(a)(3) (citing 11 U.S.C. § 363).  The United States was a party to the Settlement

Agreement, which was approved under 11 U.S.C. § 363.  Thus, the sovereign

immunity of the United States was waived under 11 U.S.C. § 106, and the Court

could order the United States to be joined as a party in this adversary proceeding if

necessary.

Finally, even if the United States was necessary and could not be joined, the

adversary could still "continue in equity and good conscience without" it.  U.S. ex

rel. Steele, 135 F.3d at 1251.  Neither the United States, nor any other party, will

be prejudiced by continuing without the United States.  PWE has not alleged

prejudice, nor persuasively explained why the United States must be joined.  The

United States voluntarily removed itself from the Settlement Agreement when it

returned the money and assets after the forfeiture was reversed.  PWE has not met

its burden to show why resolution of the current matter requires the United States

to be pulled back in.

Because the Court has found that Bala has standing to prosecute this adversary and that that United States is not an indispensable party, the Court will consider the merits of the summary judgment motions.

## II.     Bala's Motion for Summary Judgment

As noted, Bala moves for summary judgment.  Summary judgment is appropriate when "the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law."  Graning v. Sherburne Cnty., 172 F.3d 611, 614 (8th Cir. 1999); see also Fed. R. Civ. P. 56(c); Myers v. Richland Cnty., 429 F.3d 740, 750 (8th Cir. 2005).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Here, the parties agree on the material facts, but disagree about how the law applies to those facts.  In particular, they agree on what the Settlement Agreement and Order approving it say, and what related events occurred.  They disagree about the legal effect of the relevant documents and events.

### (a) Jurisdiction

Bala first argues for summary judgment on the grounds that the Court did not have jurisdiction to approve the Settlement Agreement.  Bala argues that the

District Court, not the Bankruptcy Court, has jurisdiction over criminal forfeiture

matters.  Bala notes that criminal forfeiture is not a core proceeding and concludes

that this Court did not have jurisdiction to enter its Order approving settlement

when the debt at issue involved a criminal forfeiture.  Bala cites a number of cases

to support this contention.  GuildMaster, Inc. v. United States (In re GuildMaster,

Inc.), Bankr. No. 12-62234, 2013 WL 1331392 (Bankr. W.D. Mo. Mar. 29, 2013);

In re Ankoanda, 495 B.R. 599 (Bankr. N.D. Ga. 2013); In re Fidler, 442 B.R. 763

(Bankr. D. Nev. 2010); In re Medlin, 269 B.R. 591, 594 (Bankr. E.D.N.C. 2001).

Bala relies on GuildMaster in particular.  Bankr. No. 12-62234, 2013 WL

1331392.  There, the court noted that: "[A]ll of the relief sought. . . necessarily

involve the interpretation and application of the criminal statutes at issue in a

pending criminal matter. . .. As a result, I find that this Court lacks jurisdiction. . .."

Id. at *8.  Bala argues that, for the same reasons note in GuildMaster, that the

Court lacked jurisdiction to dispose of RSI's forfeiture by approving the Settlement

Agreement.  This Court disagrees.

Approving the Settlement Agreement here did not "necessarily involve the

interpretation and application of the criminal statutes at issue in a pending criminal

matter." Guildmaster, Bankr. No. 12-62234, 2013 WL 1331392, at *8.  The

forfeiture judgment had already been rendered.  The United States had a substantial

claim against RSI's bankruptcy estate based on that forfeiture order.  The

Settlement Agreement addressed and disposed of the property subject to forfeiture as between the United States and RSI.  In approving the Settlement Agreement, the Court never had to interpret or apply any criminal statutes.  The Bankruptcy Court simply exercised authority over the adjustment of the debtor-creditor relationship, a key facet of a bankruptcy court's jurisdiction.  28 U.S.C. § 157(b)(2)(O).

Moreover, Bala's attack on this Court's judication is barred by the doctrine of res judicata.  The Court already found in the Order approving the Settlement Agreement that: "This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334 [and] The Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (M), (N) and (O)."  In re Racing Services, Inc., Bankr. No 04-30236, Docket No. 470 at 2.  The case law is clear that "[a] court's determination of its own jurisdiction is subject to the principles of res judicata."  In re Heritage Org. LLC, 459 B.R. 911, 919–20 (Bankr. N.D. Tex. 2011), subsequently aff'd sub nom. In re Heritage Org., LLC, 544 F. App'x 512 (5th Cir. 2013), and subsequently aff'd sub nom. In re Heritage Org., LLC, 544 F. App'x 512 (5th Cir. 2013) (internal quotation marks omitted).  "Res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  In re Advanced Contracting Sols., LLC, 582 B.R. 285, 298 (Bankr. S.D.N.Y. 2018).

Bala could have raised the issue of the Court's jurisdiction when the Order was entered, or she could have appealed it. She was a party to the proceeding and had a full and fair opportunity to challenge the Court's jurisdiction. She did not raise the issue at that time or appeal the Order on the basis of jurisdiction. The Court's determination of its jurisdiction is entitled to res judicata effect on the undisputed facts of this case.

The only other permissible means by which a party may challenge a court's finding that it had jurisdiction is to bring a challenge under rule 60(b). In re TLFO, LLC, 572 B.R. 391, 429 (Bankr. S.D. Fla. 2016). Bala did not bring her substantive challenge under rule 60(b), instead she brought this motion for declaratory judgment. "[T]he Defendants merely filed Counterclaims seeking declaratory judgments—they did not seek to actually overturn the Sale Order. The Court believes this constitutes an impermissible collateral attack of the Sale Order. . . In the absence of an appeal of a final sale order, the only manner in which a sale order may be challenged is through Rule 60(b)." Id. at 429–30 (footnote omitted).

Bala's motion for declaratory judgment was not the proper vehicle to bring substantive challenge to the Court's jurisdiction. In spite of Bala's procedural error, the Court will examine her challenge as if it had been brought under the correct vehicle, Rule 60(b).

15

Rule 60(b) states that a court "may relieve a party. . . from a final judgment, order, or proceeding [because]. . . the judgment is void. . .." Fed. R. Civ. Pro. 60(b).  If an order or judgment was entered without jurisdiction then it is void, and a party may seek relief under 60(b).  Proving a claim under 60(b)(4), however, is no easy task.

> Because a court's determination that it has subject-matter jurisdiction to enter a judgment is res judicata—that is, only susceptible to direct review, not collateral attack—60(b)(4) motions (a form of collateral attack) premised on a lack of subject-matter jurisdiction would seem to always be foreclosed by res judicata. Courts finessed this paradox by carving out an exception to the preclusive effect of jurisdictional determinations when those determinations were inarguably wrong. The arguable basis rule is that exception

In re Alma Energy, LLC, 521 B.R. 1, 19 (Bankr. E.D. Ky. 2014).

The "arguable basis" rule is so named because a court's ruling on its own jurisdiction will not be overturned so long as there is some "arguable basis" that it had jurisdiction.  A judication challenge under Rule 60(b) will "succeed only if the absence of jurisdiction was **so glaring as to constitute a 'total want of jurisdiction' or a 'plain usurpation of power'** so as to render the judgment void from its inception."  Kocher v. Dow Chem. Co., 132 F.3d 1225, 1230 (8th Cir. 1997) (emphasis supplied) (quoting Kansas City S. Ry. Co. v. Great Lakes Carbon Corp., 624 F.2d 822, 825 (8th Cir. 1980)).  This is because "federal courts have 'jurisdiction to determine jurisdiction,' that is, 'power to interpret the language of the jurisdictional instrument and its application to an issue by the court.'"  Kansas

16

City S. Ry. Co., 624 F.2d at 825 (quoting Stoll v. Gottlieb, 305 U.S. 165 at 171).

As a result, "error in interpreting a statutory grant of jurisdiction is not equivalent

to acting with total want of jurisdiction." Kansas City S. Ry. Co., 624 F.2d at 825.

Even if the Court took Bala's jurisdiction arguments at face value, she has

not alleged an "absence of jurisdiction. . . so glaring as to constitute a 'total want of

jurisdiction' or a 'plain usurpation of power. . ..'" Kocher, 132 F.3d at 1230

(internal citations omitted).  Bala has failed to make a showing necessary for relief

under Rule 60(b).

Bala's jurisdiction challenge fails on the merits.  This Court had jurisdiction

to enter the Order approving the Settlement Agreement.  The Court's finding that it

had jurisdiction within the Order approving the Settlement Agreement is subject to

res judicata.  Bala's motion for declaratory judgment is an improper vehicle for her

substantive challenge and even if she'd brought her challenge under the correct

vehicle, Rule 60(b), she would fail.   For the forgoing reasons, the Bala's motion

for declaratory judgment that the Settlement Agreement is void due to lack of

jurisdiction is denied.

### (b) Mutual Mistake

Bala also argues that the parties to the agreement made it based on the

mutual mistake that the forfeiture was valid.  Bala points to Trustee's statements in

support of the Settlement Agreement noting that the impetus for the settlement was

17

the substantial and looming forfeiture to the United States. Bala concludes that,

when the forfeiture was later invalidated on appeal, it was revealed that the entire

agreement was premised on a mutual mistake. Bala argues that, under North

Dakota law, the doctrine of mutual mistake renders that the Settlement Agreement

voidable and that the parties are required to take action to void the contract.

The doctrine of mutual mistake allows a court to reform or revise a contract

where it finds the contract does not truly express the intent of the parties due to a

mistake of fact. See N.D.C.C. § 32-04-17. Courts do not grant this remedy lightly.

"The party seeking reformation of a written instrument must establish by clear and

convincing evidence that the document does not state the parties' intended

agreement." Johnson v. Hovland, 795 N.W.2d 294, 299 (N.D. 2011). "Courts

grant the 'high remedy of reformation' only upon the 'certainty of error.'" Id.

(quoting Ell v. Ell, 295 N.W.2d 143, 150 (N.D. 1980)).

The doctrine of mutual mistake sets a high bar for proof that no agreement

was reached. Bala has not presented "clear and convincing evidence that the

document does not state the parties' intended agreement." Id. Trustee and PWE

both argue that there was no mutual mistake. They both state that the Settlement

Agreement accurately reflected their intentions at the time.

Even if there were grounds for this Court to find mutual mistake, one of the

parties to the Settlement Agreement would need to take action to void it. A finding

18

of mutual mistake makes the contract **voidable**, not void.  Armstrong v. United

States, 277 F.Supp.2d 1040, 1044 (D.N.D. 2003) ("A mutual mistake alone does

not, as the Armstrongs suggest, render a contract void or without legal force and

binding effect under state law. Rather, it renders the contract voidable").  The fact

that a contract is voidable does not, as Bala states, mean that a party to the contract

**must** take action to void it.  Armstrong, which Bala cites to support her argument

that a party must take action to void a contract where there are grounds for mutual

mistake, reached the exact opposite conclusion.  Id.  Armstrong found that the

contract in question, which was potentially voidable under the doctrine of mutual

mistake, was **not void because the parties failed to take action to void it**.  Id.

("Regardless of whether the assignment was voidable, the fact remains that it was

never voided and any efforts to void the assignment were never followed through

to completion").

Bala contends that, although no party came before a court claiming mutual

mistake, the parties nonetheless voided the Settlement Agreement through their

conduct.  The United States returned $132,500 to RSI's bankruptcy estate along

with the other property.  Trustee accepted and disposed of the returned property

without objection.  Bala posits that these actions show a tacit acknowledgement by

the United States and Trustee that the Settlement Agreement was based on a

mutual mistake.  She argues that the United States' act of returning the money and

19

property and Trustee's act of accepting it, were all that was required to void the contract under the doctrine of mutual mistake.

The Court does not agree.  The United States returning the money and property and Trustee accepting it does not sufficiently establish that the entire Settlement Agreement was premised on a mutual mistake and voided.  Even if these actions alone were sufficient to satisfy the doctrine of mutual mistake, Bala would have shown, at most, that the agreement was voided between the United States and Trustee.  Bala has made no showing that the Settlement Agreement was void between Trustee and PWE.

### III.   Severability

PWE points out that even if the Court finds that the Settlement Agreement was voided between the United States and Trustee, it remains in full force between PWE and Trustee because it is severable.  Severability is a contract issue.  "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."  N.D.C.C. § 9-07-02.  "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."  N.D.C.C. § 9-07-08.

The Settlement Agreement contains the following severability provision:

Partial Invalidity. Any provision of this Agreement which is found to be invalid or unenforceable by any court in any jurisdiction shall, as to

that jurisdiction, be ineffective to the extent of such invalidity or unenforceability, and the invalidity or unenforceability of such provision shall not affect the validity or enforceability of the remaining provisions hereof.

PWE's Exhibit 1 at 4.

The plain language of the severability clause makes clear that the Settlement Agreement is to remain effective even if a portion is invalidated.  In the absence of substantial evidence to the contrary, the Court assumes that the unambiguous language of a contract reflects the parties' intentions.  Here, the contract language is clear.  PWE and Trustee both attest that they intended the severability clause to have its plain meaning at the time they entered into the Settlement Agreement. The severability clause makes clear that, regardless of the actions of the United States, the contract remains enforceable between Trustee and PWE.

Even if the Settlement Agreement did not contain a severability clause, the Court would not assume that acts of rescission by one or two parties to a multi-party contract invalidate the entire contract.  Under North Dakota law, a contract is severable, even in the absence of a clear severability clause, if the contract has two or more parts that are "not necessarily dependent on each other."  Hofmann v. Stoller, 320 N.W.2d 786, 789 (N.D. 1982).  The test is "whether or not the parties consented to all the promises as a single whole, so that there would have been no bargain whatever if any promise or set of promises were struck out."  Id. "Whether or not a contract is severable ordinarily depends upon such factors as 'the terms of

21

the contract, its subject matter, and other circumstances disclosed by the evidence, including the conduct of the parties.'" Matter of Guardianship of Sorum, 273 N.W.2d 710, 712 (N.D. 1979) (quoting Kopald Elec. Co. v. Mandan Creamery & Produce Co., 76 N.D. 503, 37 N.W.2d 253, 256 (1949)).

There are two distinct parts to the Settlement Agreement. There is the part between Trustee and the United States and the part between Trustee and PWE. These two parts are related only in the sense that they both settle claims and dispose of property of the bankruptcy estate. They are not "dependent" on each other. Even if the Court did not find the severability clause enforceable, which it does, the parities' inclusion of that clause in the contract is further evidence that the parties intended the agreement to be severable. The actions of the parties also strongly indicate that they intended it to be severable. The United States returned the property to the bankruptcy estate over a decade ago. Since that time, neither PWE nor Trustee has taken any actions to indicate that they consider the Settlement Agreement to be void.

There is no indication in the language of the Settlement Agreement or in the evidence presented by the parties that "the parties consented to all the promises as a single whole" such that the invalidity of one portion would invalidate the entire agreement. Hofmann, 320 N.W.2d at 789. This Court finds that under the terms of the agreement and North Dakota law, the Settlement Agreement is severable.

The Court further finds that any action to void the agreement between Trustee and the United States has no impact on the continuing validity of the Settlement Agreement between Trustee and PWE.

### IV.   PWE's 12(b)(6) Motion to Dismiss and Motion for Summary Judgment.

In addition to its motion to dismiss for lack of standing and failure to join a necessary party, addressed above, PWE filed a Motion to Dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  In the alternative, PWE moves for a motion for Summary Judgment.  If the Court considers matters outside the pleadings in ruling on a 12(b)(6) motion to dismiss, it must treat it as a motion for summary judgement under Federal Rule 56.  Fed. R. Civ. P. 12(d).  In ruling on PWE's motion, the Court has considered matters outside the pleadings and thus treats the motion as one for summary judgment.

Summary judgment is appropriate when "the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue of material fact and the moving parties are entitled to judgment as a matter of law." Graning v. Sherburne Cnty., 172 F.3d 611, 614 (8th Cir. 1999).  As stated in the background section above, the parties do not present any factual dispute; their dispute involves only how the law should be applied to the agreed upon facts.

23

Bala's complaint contains two counts: (1) the Settlement Agreement is void because this Court lacked jurisdiction to approve it, (2) the Settlement Agreement is void due to mutual mistake and was voided by the United States when it returned property to RSI's bankruptcy estate.

Both of these arguments are fully addressed above.  Viewed in the light most favorable to Bala, the Court finds that she cannot prevail on count one because this Court had jurisdiction to approve the Settlement agreement and the Court's finding that it had jurisdiction is subject res judicata.  Bala cannot succeed on count two because, even if the Settlement Agreement was voided between the United States and Trustee, the Court finds that the agreement is severable such that it is still effective between PWE and Trustee.  Because Bala cannot succeed on either count of her complaint, PWE is entitled to judgement as a matter of law.

PWE's remaining arguments regarding 11 U.S.C. § 363(m) and statutes of limitations are moot as the Court has determined it is entitled to summary judgment.

## CONCLUSION

**WHEREFORE**, PWE's Motion to Dismiss for Lack of Standing is DENIED.

**FURTHER**, PWE's Motion to Dismiss for Failure to Join a Necessary Party is DENIED.

24

**FURTHER,** Bala's Motion for Summary Judgment is DENIED.

**FURTHER,** PWE's Motion for Summary Judgement is GRANTED.

Dated:  November 28, 2018

_____
Thad J. Collins
United States Bankruptcy Judge
Sitting by Designation